BRIAN M. GROSSMAN (SBN 166681)
**TESSER | GROSSMAN LLP**
11990 San Vicente Boulevard, Suite 300
Los Angeles, California 90049
Telephone: (310) 207-4558
Email: brian@tessergrossman.com

ZACHARY C. EYSTER (GA Bar No.: 192335)
**BEKIARES ELIEZER, LLP**
2870 Peachtree Road, #512
Atlanta, Georgia 30305
Telephone: (404) 537-3686
Email: zeyster@founderslegal.com
Attorneys for Plaintiff,
COMMUNITY PARTNERS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY PARTNERS, a California Non-Profit Corporation,<br><br>　　　　Plaintiff,<br>　vs.<br>LATINO DONOR COLLABORATIVE, a District of Columbia Non-Profit Corporation; and ARIZONA STATE UNIVERSITY,<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR**<br>1. **FALSE DESIGNATION OF ORIGIN;**<br>2. **COMMON LAW TRADEMARK INFRINGEMENT;**<br>3. **COPYRIGHT INFRINGEMENT;**<br>4. **BREACH OF CONTRACT.**<br><br>**JURY DEMAND** |

COMPLAINT

Plaintiff Community Partners ("Plaintiff"), alleges as follows:

# I

# JURISDICTION

1. This Court has subject matter jurisdiction over this Complaint by virtue of 28 U.S.C. §§ 1331, 1332, and 1338, 17 U.S.C. § 101 *et seq.*, and under its supplemental jurisdiction of 28 U.S.C. § 1367, the Counts of which concern acts of false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1120, 1125(a), 1125(d), and trademark infringement and unfair competition under the laws of the State of California.

2. The Court has supplemental jurisdiction over the claims arising under the laws of the State of California, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

3. This Court has personal jurisdiction over Defendants because Defendants have deliberately and intentionally marketed and sold or caused to be marketed and sold the infringing services in the State of California and to Plaintiff's customers therein.

# II

# VENUE

4. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) in that either: (1) one or more defendants reside in this district, and all defendants reside in this state; (2) a substantial part of the events or omissions giving rise to the claim occurred in this district; or (3) at least one defendant resides in this district, if there is no district in which the action may otherwise be brought.

5. The majority of the actions by the Defendants that give rise to this claim took place within this district

# III

# PARTIES

6. Community Partners is a nonprofit corporation organized and existing under the laws of the state of California, having its principal place of business at 1000 N. Alameda Street, Suite 240, Los Angeles, California 90012.

7. On information and belief, Defendant Latino Donor Collaborative, Inc. is a nonprofit corporation registered in the District of Columbia, with its principal place of business at 9777 Wilshire Blvd. Suite 400, Beverly Hills, California 90210.

8. On information and belief, Arizona State University is a public state institution with a mailing address of PO Box 877405, Tempe, Arizona 85287.

# IV

# NATURE OF THE ACTION

9. This is an action for trademark infringement, false designation of origin, and unfair competition arising under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq. (the "Lanham Act"), and under the common law of the State of California.

10. Beginning in or around 2004, David Hayes-Bautista developed the idea to use established government data programs to calculate a summary statistic for the economic performance of United States Latino persons.

11. Hayes-Bautista, with the help of Werner Schink, developed an algorithm to calculate their robust statistical metric (the "Algorithm").

12. The Algorithm continues to evolve each year as new reports are released and third parties offer financial contributions to expand to derivative works.

13. This research and Algorithm led to the development of the program aptly named the Latino GDP Project.

14. The Latino GDP Project seeks to provide a holistic view of the growing economic contribution of Latinos in the United States, though, among other things, the

publication of its annual U.S. Latino GDP Report as well as various State and Metro-Area Latino GDP reports.

15. The reports used by the Latino GDP Project are dependent on and derived through use of the Algorithm and have come to be heavily cited in academic and media outlets, as this is not calculation that other channels create, and those citing the Latino GDP data trust its source for its reliability and completeness.

16. The Algorithm, along with the resulting reports, expanded in popularity and community trust since their inception, leading Hayes-Bautista ultimately to partner with Plaintiff as his successor-in-interest to the Latino GDP-branded reports.

17. Hayes-Bautista and Plaintiff have made extensive, continuous and substantially exclusive use of the distinctive LATINO GDP Mark (the "Plaintiff's Mark"), which consumers have come to associate with high quality research and data, to which Plaintiff, its predecessors, and affiliates have dedicated significant time and resources to create and protect.

18. Despite Plaintiff's prior rights, Defendants, in full awareness of Plaintiff, its activities, and its rights, adopted the identical mark LATINO GDP (the "Infringing Mark") in an attempt to free-ride off Plaintiff's hard-won public trust to produce competing reports and data, though reliant on inferior underlying calculating tools and algorithms.

19. On information and belief, Defendant LDC adopted the Infringing Mark after having been a sponsor with respect to Plaintiff's genuine services, but Defendant LDC did not and never has made bona fide commercial use of the Infringing Mark itself, as use is defined in the Lanham Act, 15 U.S.C. § 1051 et seq.

20. Upon learning of Defendant LDC's adoption of the Infringing Mark, Plaintiff informed Defendants of its rights in and to Plaintiff's Mark.

21. Despite Plaintiff's prior rights, Defendant LDC, in full awareness of Plaintiff, its activities, and its rights, applied to register the Infringing Mark on November 15, 2023,

alleging a first use in commerce date June, 2017, when it first acted as a sponsor with Plaintiff's predecessor's activities.

22. Upon information and belief, Defendant LDC knew that it had never made commercial use of the Infringing Mark on the date of first use represented to the U.S. Patent & Trademark Office ("USPTO"), and that any connection it had to Plaintiff's Mark was with work inuring to the benefit of Plaintiff or its predecessor(s)-in-interest, and not to Defendant.

23. Defendants' infringing services are likely to cause and have caused confusion among the trade and consuming public as to the source or origin of the infringing services, thereby causing ongoing irreparable harm to Plaintiff.

## V

## FACTS COMMON TO ALL CLAIMS

24. Beginning in early 2004, David Hayes-Bautista and Werner Schink, co-founders of Latino Futures Research ("LFR"), began an effort to calculate the gross domestic product generated by Latinos in the United States and to reduce their data to an annual report.

25. The goal of LFR was to produce the annual Latino Gross Domestic Product Report ("Latino GDP Report") as this was not a metric currently being measured or tested at that time.

26. At least as early as 2007, Plaintiff's predecessors in interest were using the Plaintiff's Mark.

27. On or about 2016, Hayes-Bautista submitted a solicitation for a sponsorship association to approximately six (6) different organizations to help fund the Latino GDP Report being put out by LFR.

28. In 2017, the Latino GDP Report was partially funded by Latino Donor Collaborative ("LDC").

29. In 2018, Schink passed away, and shortly after this unfortunate event, Hayes-Bautista sought new collaborators in relation to the Latino GDP Report.

30. Hayes-Baustista ultimately partnered with Dan Hamilton and Matthew Fienup from California Lutheran University ("CLU") to continue the service and production of the Latino GDP Report.

31. On or about July 19, 2018, Hayes-Bautista assigned to CLU, and CLU received, all aspects and assets of the Latino GDP Project, including but not limited to all intellectual property assets and trademarks.

32. In or around March 2019, CLU entered into a Sponsor and Research Agreement ("SRA") with LDC to produce the 2019 Latino GDP Report.

33. The SRA states that all intellectual property would be retained by CLU unless independently developed by LDC. Plaintiff's Mark, LATINO GDP, already in existence, was not independently developed by LDC.

34. In 2020 and 2021, LDC and CLU entered into separate SRAs for each corresponding year's Latino GDP Report.

35. All SRAs signed by CLU and LDC stated that the intellectual property rights were retained by CLU unless the property was wholly, independently developed by LDC.

36. Hayes-Bautista, Paul Hsu (a colleague of Hayes-Bautista), Hamilton, and Fienup continue to make refinements to the methodology and Algorithm underlying the LATINO GDP branded data and produce Latino GDP Reports each year.

37. On March 10, 2022, all Latino GDP assets were transferred from CLU to Plaintiff, including but not limited to all intellectual property assets and trademarks.

38. In 2022, Plaintiff entered into an additional SRA with LDC in an effort to produce the 2022 Latino GDP Report.

39. On or around November 2022, Fienup, on behalf of Plaintiff, attempted to memorialize a new agreement with LDC, but the agreement was never executed.

40. On or about November 25, 2022, Elena Schink, Werner Schink's heir, executed an assignment agreement, assigning all of Werner Schink's intellectual property to Hayes-Bautista.

41. In October, 2023, LDC announced a new partnership with Arizona State University ("ASU") to produce a new Latino GDP report.

42. On September 13, 2023, Plaintiff released its 2023 Latino GDP Report.

43. Plaintiff's Mark has been associated with Plaintiff or its predecessor for many years and has acquired distinctiveness due to this longstanding use.

44. Consumers of the LATINO GDP branded services and data connect these with Plaintiff and understand Plaintiff's Mark to be an indicator of source and quality with respect to the same.

45. Plaintiff owns U.S. Application Serial Nos. 97576986 (in connection with goods and services in international class 35) and 98191202 (in connection with goods and services in international classes 9 and 41). Both applications have a first use date of 2007.

46. Plaintiff owns a series of copyrights for each report ("Published Reports") published above, which have been registered with the United States Copyright Office:

- Registration Number TX0009353801 for Community Partners' Latino Gross Domestic Product (GDP) Report: Quantifying the Impact of American Hispanic Economic Growth text (the "2017 Report").

- Registration Number TX0009353799 for Community Partners' LDC U.S. Latino GDP Report: Quantifying the New American Economy text (the "2019 Report").

- Registration Number TX0009353798 for Community Partners' 2020 LDC U.S. Latino GDP Report: Quantifying the New American Economy (the "2020 Report").

- Registration Number TX0009353795 for Community Partners' 2021 LDC U.S. Latino GDP Report: Quantifying the New Mainstream Economy (the "2021 Report").
- Registration Number TX0009346845 for Community Partners' 2022 LDC U.S. Latino GDP Report: Quantifying the New Mainstream Economy (the "2022 Report").
- Registration Number TX0009348890 for Community Partners' 2023 U.S. Latino GDP Report (the "2023 Report").

47. Prior to the acts complained of herein, Plaintiff widely disseminated the Published Reports to numerous parties across the United States.

48. On or about September 22, 2023, Fienup sent correspondence to Ana Valdez, CEO of LDC, putting her on notice of the pending trademark rights in the LATINO GDP wordmarks and the other intellectual property rights stemming from the Latino GDP Project.

49. On or about September 24, 2023, Fienup sent similar correspondence to Arizona State University.

50. On or about two weeks after Plaintiff's report was published, and less than a week after Plaintiff sent correspondence to put Defendants on notice, Defendants published "2023 Official LDC U.S. Latino GDP Report."

On November 15, 2023, Defendant filed an application to register the identical trademark, LATINO GDP (the "Infringing Mark") stating a first use date as early as 2017.

**Defendants' Infringing Acts**

51. Defendants, in full knowledge of Plaintiff's prior rights, are marketing, offering for sale, and selling identical or similar services, albeit of lower quality and value under the identical infringing name LATINO GDP.

52. Only after Defendants were put on notice of Plaintiff's rights did Defendant LDC attempt to register the Infringing Mark.

53. Defendants market and sell the infringing services through trade channels materially identical or similar to those of Plaintiff.

54. On information and belief, Defendants deliberately intended to trade on Plaintiff's, along with Hayes-Bautista, Hsu, Hamilton, and Fienup's, longstanding and sterling reputation in the market.

55. Defendants are aware of Plaintiff's objections as to Defendants' use of the Infringing Mark, as Defendants were put on notice of Plaintiff's Marks as well as knowing that the intellectual property rights, including trademark rights, in the Latino GDP Project belong to Plaintiff, as they signed multiple agreements acknowledging the same.

56. Notwithstanding Defendants' awareness of Plaintiff's rights in Plaintiff's Mark, Defendants have refused to cease their unlawful actions.

57. By using the Infringing Mark in connection with its infringing services, Defendants seek to confuse and deceive the trade and the consuming public as to the source or origin of the infringing services and the genuine Plaintiff's services.

58. Additionally, Defendants inclusion of "official" in its infringing work shows the intent to confuse the public.

59. On information and belief, Defendants intended to free-ride on the goodwill represented by the Plaintiff's Mark developed by Plaintiff when it adopted an identical mark.

60. Defendants culpably disregarded the risk of confusion to the public in his adoption of the infringing mark.

61. On information and belief, Defendants therefore knowingly, willfully, intentionally, and maliciously adopted and used the Infringing Mark for marketing and selling the infringing services, knowing that such use would mislead, deceive, and generate confusion among the consuming public.

62. Defendants applied to register the Infringing Mark with the US Patent & Trademark Office ("USPTO") on November 15, 2023, after it had been put on notice of Plaintiff's rights.

63. Defendant LDC alleged a first use in commerce of the Infringing Mark in June, 2017, at the time in which LDC and Plaintiff had an SRA in place.

64. Defendant LDC signed the infringing application, attesting that, "to the best of [its] knowledge and belief, no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

65. Defendants knew of Plaintiff and its rights in the Plaintiff's Mark at the time LDC signed this attestation.

### The Harm to Plaintiff as a Result of Defendant's Unlawful Conduct

66. Defendants' infringing services are identical to the services offered under the Plaintiff's Mark.

67. Thus, Defendants' use of the Infringing Mark is likely to cause the consuming public to be deceived.

68. Given Defendants' cavalier attitude toward intellectual property infringement and Plaintiff's manifestly superior rights in Plaintiff's Mark, Defendants put at risk and damages Plaintiff's reputation, goodwill, and ability to market and promote its goods and services.

69. Defendants' unauthorized use of the confusingly similar Infringing Mark has injured Plaintiff's interests and will continue to do so unless enjoined. Specifically, Defendants (a) have damaged and continue to damage Plaintiff's rights and valuable goodwill in Plaintiff's Mark; and (b) have injured and continue to injure Plaintiff's right to use and license Plaintiff's Mark as exclusive indicia of origin of Plaintiff's goods and services.

70. All conditions precedent to the filing of this action have occurred or have been waived or excused.

71. As a result of the wrongful conduct by Defendants alleged herein, Plaintiff has been forced to engage its counsel of record to enforce its rights in connection with the trademarks and copyrights at issue. Its counsel is accordingly entitled to its reasonable attorneys' fees and costs in connection with these legal services.

## FIRST CLAIM FOR RELIEF

**(For False Designation of Origin against all Defendants)**

72. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 72 above as if fully set forth herein.

73. Through Plaintiff's continuous and substantially exclusive use of the Plaintiff's Mark in commerce for many years, the relevant trade and consuming public has come to identify Plaintiff's Mark and the services offered under it as originating with Plaintiff and its predecessor(s)-in-interest.

74. Plaintiff has built a valuable resource and service in its use of Plaintiff's Mark, and the goodwill associated with the mark is of high value.

75. Defendants' conduct as described herein constitutes use of a false designation of origin and/or a false or misleading description or representation of fact on or in connection with their services which is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the parties, and/or as to the origin, sponsorship, or approval of their respective goods and services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' conduct as described herein also constitutes an attempt to arrogate to themselves the substantial goodwill that Plaintiff has developed in Plaintiff's Mark, all to the damage of Plaintiff.

76. Defendants' use in commerce of designations which are confusingly similar and/or identical to Plaintiff's Mark, despite having actual and constructive notice of

Plaintiff's prior rights in and to Plaintiff's Mark, constitutes intentional conduct by Defendants to make false designations of origin and false descriptions about their goods, services, and commercial activities.

77. Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to Plaintiff as a result of the foregoing acts, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

**(For California Common Law Trademark Infringement against all Defendants)**

78. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 78 as if fully set forth herein.

79. Through the long-standing, continuous, and exclusive use of the Plaintiff's Mark in commerce, the relevant trade and consuming public have come to understand Plaintiff's Mark as identifying Plaintiff and/or its predecessor(s) indicating the source of origin of Plaintiff's services as coming from Plaintiff and its predecessors.

80. Defendants have used, and are continuing to use, designations that are confusingly similar and/or identical to Plaintiff's Mark in interstate commerce, including the State of California, in connection with products and services identical to those offered under Plaintiff's Mark.

81. Defendants' unauthorized use of the infringing services is likely to cause confusion in the marketplace between the parties' respective services as the services and goods are identical.

82. Defendants' infringement of Plaintiff's Mark is in willful and wanton disregard of Plaintiff's rights in and to the same, and without the consent of Plaintiff.

///

///

///

# THIRD CLAIM FOR RELIEF

### (For Copyright Infringement against all Defendants)

83. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 83 as if fully set forth herein.

84. Defendants had access to the Published Projects, including without limitation, through (a) LDC's personal files and (b) access to Plaintiff's website.

85. Defendant infringed upon Plaintiff's copyright by creating, making and/or developing directly infringing works from the Published Projects and by producing, distributing, and/or selling the Infringing Work through an online website.

86. Due to Defendants' acts of infringement, Plaintiff has suffered damages in an amount to be determined at trial.

87. Due to Defendants' act of copyright infringement as alleged herein, Defendants have obtained profits they would not otherwise have realized but for their infringement of the Published Projects. As such, Plaintiff is entitled to disgorgement of Defendants' profits attributable to infringement of the Published Projects in an amount to be determined at trial.

88. Defendants have committed copyright infringement with actual or constructive knowledge of Plaintiff's rights such that said acts of copyright infringement were, and continue to be, willful, intentional, and malicious.

# FOURTH CLAIM FOR RELIEF

### (For Breach of Contract against Defendant LDC)

89. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 89 as if fully set forth herein.

90. Defendant LDC executed multiple SRAs with Plaintiff, each of which expressly acknowledges that Plaintiff is the owner of all intellectual property not developed wholly independently by Defendant LDC.

91. Notwithstanding this, Defendant has sought to claim trademark rights in Plaintiff's Mark, going as far as to claim to the USPTO that it, and not Plaintiff, is the only party with rights in and to the Mark to the best of its knowledge and belief.

92. This conduct is a material breach of Defendant LDC's continuing obligations under the various SRAs it has signed, and unless enjoined, these breaches will continue to cause significant and irreparable harm and monetary damage to Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Community Partners prays for relief against Defendants Latino Donor Collaborative and Arizona State University as follows:

i. That Defendants and their agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them, or any of their successors or assigns or any of them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

   a. using the marks "LATINO GDP" or any other reproduction, counterfeit, copy, confusingly similar variant, or colorable imitation of Plaintiff's Mark, in commerce in any medium;
   
   b. advertising, marketing, offering for sale, or providing or selling the infringing services;
   
   c. using Plaintiff's Mark, or any reproduction, counterfeit, copy, confusingly similar variant or colorable imitation of the same, in any manner likely to cause others to believe that Defendant's goods or services are connected with Plaintiff or are genuine Community Partners-licensed products or services;
   
   d. committing any other acts that may cause the purchasing public to believe that Defendant's goods and services are genuinely licensed by Plaintiff or otherwise provided for the benefit of Plaintiff.

      e. shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of any materials falsely bearing the infringing mark, or any other reproduction, copy, confusingly similar variant or colorable imitation of Plaintiff's Mark; and

      f. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (e).

  ii. That Defendants be required to account for and pay to Plaintiff, Defendants' profits from the provision of the infringing services and any other product or service incorporating, copying, or imitating the Plaintiff's Mark or any other brand element of Plaintiff, or sold under the Infringing Mark, and such sum in addition thereto as the Court shall find just.

  iii. That Plaintiffs be awarded all profits of Defendants, plus all losses of Plaintiff, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. § 504 et seq.;

  iv. That this case be found exceptional and Plaintiff be awarded its attorneys' fees pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 505 et seq., and/or other applicable law.

  v. That Plaintiff recover the damages arising out of the Defendants' wrongful acts in a sum equal to three times the actual damages suffered by Plaintiff, as provided in 15 U.S.C. § 1117(b) and/or other applicable law.

  vi. That Defendants be required to disgorge their profits and other ill-gotten gains pursuant to 15 U.S.C. § 1117(a) and other applicable law.

  vii. That Plaintiff have and recover the taxable costs of this civil action, including reasonable attorneys' fees and costs, and interest.

  viii. That Plaintiff be awarded punitive or exemplary damages in view of Defendants' reckless, willful, and wanton acts committed with conscious disregard for the rights of Plaintiff.

ix. That Plaintiff have such other general and further relief as this Court deems just and proper.

Dated: April 5, 2024

TESSER | GROSSMAN LLP
BRIAN M. GROSSMAN


*/s/ Brian M. Grossman*
BRIAN M. GROSSMAN
Attorneys for Plaintiff,
COMMUNITY PARTNERS

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims for relief which may be tried to a jury.

Dated: April 5, 2024

TESSER | GROSSMAN LLP
BRIAN M. GROSSMAN

*/s/ Brian M. Grossman*
BRIAN M. GROSSMAN
Attorneys for Plaintiff,
COMMUNITY PARTNERS

- 16 -
**COMPLAINT**