**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY PARTNERS, ) | Case No. 2:24-cv-02802 DDP (ASx) |
| ) | |
| Plaintiff, ) | **ORDER DENYING PLAINTIFF'S** |
| ) | **APPLICATION FOR TEMPORARY** |
| v. ) | **RESTRAINING ORDER** |
| ) | |
| LATINO DONOR COLLABORATIVE, ) | [Dkt. 42] |
| ) | |
| Defendant. ) | |
| ) | |

Presently before the court is Plaintiff's Application for Temporary Restraining Order. Dkt. 42 ("*App.*"). Defendant opposed. Dkt. 45 ("*Opp.*"). Having considered the parties submissions and heard oral argument, the court adopts the following order denying Plaintiff's application.

**I. BACKGROUND**

Plaintiff Community Partners ("CP") filed the instant action against Defendant Latino Donor Collaborative ("LDC") alleging false designation of origin, common law trademark infringement, copywrite infringement, and breach of contract based upon Defendant's use of "Latino GDP." *See generally* Dkt. 16, First Amended Complaint ("FAC"). Plaintiff alleges that, in 2004, David Hayes-Bautista and Werner Schink

founded Latino Futures Research in the hopes of producing an annual Latino Gross Domestic Product ("Latino GDP") Report, and, in 2016, they began seeking sponsorship to produce this report. FAC ¶ 24–26. Plaintiff further alleges that since at least 2007, Plaintiff's predecessors in interest were using the "Latino GDP" mark. FAC ¶ 26. Defendant alleges that an annual report on Latino contributions to the U.S. economy was the idea of its chairman, Sol Trujillo, and that LDC sought out and commissioned Hayes-Bautista and Schink to produce the report in 2016. Dkt. 31, Counterclaim ("CC") ¶ 13–15.

In 2017, Defendant funded, at least in part, the Latino GDP Project to produce the 2017 Latino GDP Report. FAC ¶ 28; CC ¶ 14–15. In 2018, Schink passed away and Hayes-Bautista sought out other researchers to collaborate on the Latino GDP Project. FAC ¶ 29. He began working with Dan Hamilton and Matthew Fienup from California Lutheran University ("CLU") and Hayes-Bautista assigned to CLU "all aspects and assets of the Latino GDP Project." FAC ¶30–31. In 2019-2021, Defendant and CLU entered into a Sponsor Research Agreement ("SRA") each year to produce the "LDC U.S. Latino GDP Report." *See* Dkt 42-2, Exhibit B; *see also* Dkt. 42-2, Exhibit K[1]; CC, Exhibit 3. These SRAs provide that "all rights, title and interest to University Intellectual Property under the Project…shall belong to CLU. . . ." Dkt. 42-2, Exhibit B, ¶ 8.1.

In March 2022, CLU entered into the Project Sponsorship Separation Agreement ("Separation Agreement") with Plaintiff CP in which CLU assigned "all right, title, and interest in all tangible or intangible assets related to the Project held by "CLU to CP, including "[a]ll intellectual property rights associated with the Project including…names and/or trademarks (registered or unregistered) of the Project. . . ." Dkt. 42-2, Exhibit C. In September 2022, Plaintiff and Defendant entered into an SRA ("2022 SRA") for the completion of the 2022 "LDC U.S. Latino GDP Report." *See* Dkt. 42-2, Exhibit E. The

---

[1] Though Plaintiff failed to properly authenticate the exhibits attached to its Application for a TRO, Dkt. 42, there does not seem to be any genuine dispute as to their authenticity. *See* Dkt. 45-1, Defendant's Evidentiary Objections, 2:8–19; *see generally Opp.*

2

2022 SRA provides that "[a]ll rights, title and interest to Intellectual Property under the Project…shall belong to CP," and that Defendant "acknowledges that the intellectual property derived from past [SRAs] between [Defendant and CLU] remains with CLU and/or CP consistent with the [Separation Agreement]." *Id.* at ¶¶ 8.1–8.2.  Plaintiff filed an application to register "Latino GDP" with the U.S. Patent and Trademark Office ("USPTO").  FAC ¶ 45.  Unable to reach an agreement in 2023, Defendant partnered with Arizona State University to produce a 2023 report entitled "2023 Official LDC U.S. Latino GDP Report."  FAC ¶ 41–42, 50.  Defendant also filed an application to register "Latino GDP" and "LDC U.S. Latino GDP" with the USPTO.  *See* CC ¶ 21; FAC ¶ 50.

In April 2024, Plaintiff filed the instant action.  *See generally* Dkt. 1.  In July, Defendant filed its Answer and Counterclaim.  *See generally* Dkt. 31, Answer and CC.  On August 30, 2024, Plaintiff filed an application for a TRO enjoining Defendant from using "Latino GDP" in the title of its 2024 report to be released at Defendant's conference on September 12, 2024.  *See generally App.*

**II. LEGAL STANDARD**

The issuance of a temporary restraining order ("TRO") is governed by the same legal standards that govern the issuance of a preliminary injunction.  *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n. 7 (2001).  A party seeking a preliminary injunction or TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008).  A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22.

///

///

///

3

## III. DISCUSSION

Plaintiff has not made a sufficient showing of likely success on the merits to warrant such an extraordinary remedy.[2] Although Plaintiff alleges use of the mark since at least 2016, Plaintiff does not provide any evidence indicating use prior to the 2017 report and its only claim to ownership at this stage comes via the SRAs and Separation Agreement.[3] *See App.* at 6:7; *see also* FAC ¶ 26–27. Plaintiff contends that the 2022 SRA between the parties, when read in conjunction with the Separation Agreement, establishes that Plaintiff owns all "Intellectual Property under Project," including trademarks such as Latino GDP. *See* Dkt. 42-2, Exhibits B and E[4]; *see also App.* at 10:9–11, 2:22–3:10. Defendant, however, argues that any assignment of rights by CLU to Plaintiff was invalid because Paragraph 10.2 of the prior SRAs between Defendant and CLU states that neither party may assign its rights under the agreement without prior written consent of the other party, which CLU did not obtain from Defendant prior to the Separation Agreement. *See Opp.* at 17:15–19; *see also* Dkt. 42-2, Exhibit B, ¶ 10.2. Further, Plaintiff did not submit evidence that Defendant received a copy of the Separation Agreement prior to signing the 2022 SRA. *See generally* Dkt. 24-2.

Thus, there are significant questions regarding ownership of the mark. Additionally, regarding Plaintiff's trademark infringement and false designation of origin claims, Plaintiff has provided insufficient evidence to justify the issuance of a TRO. In short, the above questions cannot be answered at this early stage of litigation without a more developed factual record. Accordingly, Plaintiff's request for injunctive relief is denied.

---

[2] As a preliminary matter, it should be noted that Plaintiff failed to comply with the notice requirements of both the Federal and Local Rules of Civil Procedure. *See generally* Dkt. 42; see Fed. R. Civ. Pro. 65; L.R. 65-1. This alone would be sufficient reason to deny the issuance of a TRO.

[3] To the extent Plaintiff may have attempted to establish use of the mark prior to 2017 through Exhibit A, this unauthenticated letter is undated and does not contain the Latino GDP mark. *See* Dkt. 42-2, Exhibit A.

4

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Application for a TRO is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: September 10, 2024

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE