Kelly Cunningham (SBN 186229)
    kcunningham@ecjlaw.com
Elliot Z. Chen (SBN 313941)
    echen@ecjlaw.com
Zoe Vallier (SBN 324324)
    zvallier@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Twelfth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Defendant
LATINO DONOR COLLABORATIVE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| COMMUNITY PARTNERS, a California Non-Profit Corporation,<br><br>      Plaintiff,<br><br>    v.<br><br>LATINO DONOR COLLABORATIVE, a District of Columbia Non-Profit Corporation; and ARIZONA STATE UNIVERSITY BOARD OF REGENTS,<br><br>      Defendant. | Case No. 2:24-cv-02802-DOC-AS<br><br>*The Hon. David O. Carter*<br><br>**DEFENDANT LATINO DONOR COLLABORATIVE'S NOTICE OF MOTION AND MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER**<br><br>*[Filed concurrently with Declaration of Kelly Cunningham and Declaration of Elliot Z. Chen]*<br><br>Date:    October 27, 2025<br>Time:    8:30 a.m.<br>Crtrm.:  10A<br><br>*Action Filed:    April 5, 2024* |

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 27, 2025 at 8:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 10A of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, CA 92701, before the Honorable Judge David O. Carter of the United States District Court for the Central District of California, Defendant Latino Donor Collaborative ("Latino Donor") will and hereby does respectfully move the Court for leave to serve its rebuttal expert survey report on secondary meaning (to the extent that leave is required). In the alternative, Latino Donor moves to modify the Scheduling Order to permit service of the report as an initial expert disclosure.

Community Partners ("CP") filed this lawsuit asserting that the term "LATINO GDP" is its exclusive trademark for economic reports evaluating the Latino contribution to the GDP of the United States. At best, "LATINO GDP" is a descriptive term for the reports at issue (if not generic). Accordingly, to the extent that it is protectible at all, it must have acquired secondary meaning in the relevant community to be protectible.

The grounds for this motion are that CP, which bears the burden of proving secondary meaning of the "LATINO GDP" mark, has produced no viable evidence on that issue and instead repeatedly representing in discovery that it intended to rely on expert testimony. Latino Donor diligently commissioned a rebuttal expert survey report in reliance on CP's representations, at significant time and expense. However, CP failed to serve an initial expert report. The Scheduling Order sets a September 11, 2025 rebuttal expert report deadline but does not define what qualifies as "rebuttal" expert report. Latino Donor contends that the report is properly classified as rebuttal testimony that responds to CP's claim of secondary meaning—an issue on which CP bears the burden of proof. Latino Donor served its rebuttal expert report on September 11, 2025 in accordance with the Scheduling Order. Alternatively, if the Court deems the Scheduling Order not to permit such a rebuttal in the absence of an initial expert

1  report, good cause exists to grant Latino Donor leave to serve the Report and/or

2  modify the scheduling order to clarify the definition of "rebuttal report" because

3  Latino Donor acted diligently and CP cannot claim prejudice where the evidence

4  concerns an element on which CP alone bears the burden of proof.

5      Pursuant to Local Rule 7-3, Latino Donor met and conferred with counsel for

6  CP via videoconference on September 9, 2025. (Chen Decl., ¶4).

7      This Motion is based on this Notice of Motion and Motion for Leave to Serve

8  Expert Report, or in the Alternative to Modify the Scheduling Order, the

9  accompanying Memorandum of Points and Authorities, the concurrently filed

10  Declarations of Kelly Cunningham and Elliot Chen, and such other arguments or

11  evidence that may be presented in connection with the hearing of this Motion.

12

13  DATED:  September 17, 2025          ERVIN COHEN & JESSUP LLP
                                        Kelly Cunningham
14                                      Elliot Z. Chen
                                        Zoe Vallier
15

16

17  By: _____

18                                      Elliot Z. Chen
                                        Attorneys for Defendant LATINO
19                                      DONOR COLLABORATIVE

20

21

22

23

24

25

26

27

28

18525.2:11636412.8

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY
SCHEDULING ORDER

ERVIN COHEN & JESSUP LLP

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.  INTRODUCTION ................................................................................................ 5

II. STATEMENT OF FACTS ................................................................................. 7

   A.  CP Initiates Lawsuit Despite USPTO Rejecting Trademark Protection of "Latino GDP" Wordmark ................................................. 7

   B.  CP Provides No Evidence of Secondary Meaning Of "Latino GDP", Indicates It Will Do So Through an Expert Report ................... 8

   C.  The Court's Scheduling Order Does Not Define Rebuttal Expert Reports ........................................................................................... 12

III. ARGUMENT ................................................................................................... 12

   A.  Latino Donor's Report Qualifies As "Expert Rebuttal" Under The Scheduling Order ................................................................. 12

      1.  The Scheduling Order Indicates That Latino Donor Can Properly Serve the Rebuttal Report ............................................ 13

      2.  The Report Is Properly Classified as a Rebuttal Expert Report Because It Is Plaintiff's Burden to Show Secondary Meaning .............................................................. 14

   B.  In The Event That Latino Donor's Interpretation Of The Scheduling Order Is Incorrect, The Court Should Grant Latino Donor Leave Serve The Report Or Amend The Scheduling Order To Permit Service ................................................................. 15

      1.  The Court should permit Latino Donor's expert report if it is untimely ..................................................................... 15

      2.  Good cause exists to modify the Scheduling Order ................... 19

IV. CONCLUSION ............................................................................................... 20

ERVIN COHEN & JESSUP LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*AMID, Inc. v. Medic Alert Found. United States, Inc.*,
    241 F. Supp. 3d 788 (S.D. Tex. 2017)................................................................. 11

6

7
*Andrews v. Plains*
    *all Am. Pipeline, L.P.*, 2019 WL 6647928, *5 (C.D. Cal. Nov. 22,
8   2019) ................................................................................................................. 17

9
*Art Attacks Ink, LLC v. MGA Entertainment Inc.*,
    581 F. 3d 1138 (9th Cir. 2009) ......................................................................... 17

10

11
*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*,
    533 F. Supp. 75 (S.D. Fla. 1981), aff'd, 716 F.2d 854 (11th Cir.
12   1983) ................................................................................................................. 11

13
*Brown v. Quiniou*,
    744 F. Supp. 463 (S.D.N.Y. 1990) ................................................................... 18
14

15
*In Re Certain Vacuum Bottles & Components Thereof*,
    4 ITRD 1937 (USITC Oct. 29, 1982) ............................................................... 17
16

17
*Donell v. Fid. Nat. Title Agency of Nevada*,
    2012 WL 170990 (D. Nev. Jan. 20, 2012) ....................................................... 13
18

19
*FLOE Int'l Inc. v. Newmans' Mfg. Inc.*,
    WL 5159513 (D. Minn. Feb. 23, 2006)....................................................... 13, 18
20

21
*Gene Pool Techs., Inc. v. Coastal Harvest, LLC*,
    2023 WL 5941757 (C.D. Cal. July 26, 2023) .......................................15, 16, 17
22

23
*Hynix Semiconductor Inc. v. Rambus Inc.*,
    2008 WL 350647 (N.D. Cal. Feb. 3, 2008).................................................. 13, 14
24

25
*Jarrow Formulas, Inc. v. Now Health Grp., Inc.*,
    2012 WL 3186576 (C.D. Cal. Aug. 2, 2012) ................................................... 17

26
*Lanard Toys Ltd. v. Novelty, Inc.*,
    375 F. App'x 705 (9th Cir. 2010).................................................................. 16, 17
27

28

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

ERVIN COHEN & JESSUP LLP

1
2

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    632 F. 2d 817 (9th Cir. 1980) .......................................................................... 14

3
4

*Milne Fruit Prods., Inc. v. Indian Summer Coop., Inc.*,
    2023 WL 6617318 (E.D. Wash. Mar. 1, 2023) ..................................... 15, 16, 17

5
6

*Monster, Inc. v. Dolby Lab'ys Licensing Corp.*,
    920 F. Supp. 2d 1066 (N.D. Cal. 2013) ............................................................ 18

7
8

*Noyes v. Kelly Servs.*,
    488 F. 3d 1163 (9th Cir. 2007) ........................................................................ 19

9

*Oracle America, Inc. v. Google Inc.*,
    2011 WL 5572835 (N.D. Cal. Nov. 15, 2015) ........................................... 18, 19

10
11

*Poore-Rando v. United States*,
    2017 WL 5549580 (W.D. Wash. Nov. 17, 2017) .............................................. 19

12
13

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    2013 WL 4068833 (S.D. Cal. Aug. 12, 2013) .................................................. 13

14
15

*Royal Crown Co., Inc. v. The Coca-Cola Co.*,
    892 F. 3d 1358 (Fed. Cir. 2018) ...................................................................... 14

16
17

*Snap Inc. v. Vidal*,
    750 F. Supp. 3d 1120 (C.D. Cal. 2024) ..................................................... 14, 15

18
19

*Spraying Systems Co. v. Delavan, Inc.*,
    975 F. 2d 387 (7th Cir. 1992) .......................................................................... 11

20

*Walker & Zanger, Inc. v. Paragon Indus.*,
    2006 WL 1581969 (N.D. Cal. June 6, 2006) .................................................... 19

21
22

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) ............................................................ 11

23
24

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F. 3d 925 (9th Cir. 2005) .................................................................... 14, 15

25

**Court Rules**

26

Fed. R. Civ. P. 16(b)(4) ...................................................................................... 19

27

Fed. R. Civ. P. 26 ................................................................................................ 12

28

ERVIN COHEN & JESSUP LLP

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY
SCHEDULING ORDER

Fed. R. Civ. P. 26(a)(2)........................................................................................16, 19

Fed. R. Civ. P. 26(a)(2)(D)(ii) ...................................................................................13

ERVIN COHEN & JESSUP LLP

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY
SCHEDULING ORDER

ERVIN COHEN & JESSUP LLP

# I.    <u>INTRODUCTION</u>

Defendant Latino Donor Collaborative ("Latino Donor") seeks leave to serve its rebuttal expert survey report on secondary meaning of the term "Latino GDP," to the extent that leave is required. The expert report is properly classified as "expert rebuttal" under the Scheduling Order, because it responds to Plaintiff Community Partners' ("CP") claims regarding a central issue to CP's cause of action for trademark infringement, on which CP bears the burden of proof. But, in the alternative, Latino Donor requests that the Court grant Latino Donor leave to use its expert report which it served on September 11, 2025 and/or modify the Scheduling Order to clearly permit Latino Donor's rebuttal report.

Latino Donor, a non-profit think tank co-founded in 2010 by Sol Trujillo and former U.S. Secretary of Housing and Urban Development Henry Cisneros, has long sought to combat harmful stereotypes about Latinos in the media by producing credible research and data. Since 2017, Latino Donor has published the *LDC U.S. Latino GDP Report*, a groundbreaking annual study quantifying the Latino community's contribution to the United States economy. The report measures the gross domestic product (GDP) attributable to US Latinos or the "Latino GDP."

CP entered the picture only in 2022, when Latino Donor commissioned CP to create the 2022 LDC U.S. Latino GDP Report. The relationship between Latino Donor and CP quickly dissolved. And, when it did, CP attempted to claim exclusive rights in the generic phrase "Latino GDP." The USPTO has already rejected CP's attempts to register "Latino GDP" on the grounds that the term is either generic or highly descriptive. Undeterred, CP filed suit against Latino Donor asserting infringement of the unregistered (rejected) term "LATINO GDP."

At the heart of CP's trademark claim is the question of whether "LATINO GDP" has acquired secondary meaning, because descriptive terms are not protectable trademarks unless the public associates the term with a single source rather than its ordinary descriptive meaning. A highly descriptive, if not generic, term like LATINO

1   GDP requires an especially strong showing of secondary meaning. Yet CP has
2   presented no viable evidence of secondary meaning. Throughout discovery, CP
3   repeatedly suggested that it would rely on expert testimony to establish secondary
4   meaning, specifically referencing surveys. But when the expert disclosure deadline
5   arrived, CP did not produce an expert report on secondary meaning. This came as a
6   great surprise to Latino Donor because, given the highly descriptive nature of the
7   asserted mark and the absence of other secondary meaning evidence, a survey was
8   mandatory for CP to have any hope of prevailing.

9       In reliance on CP's representations throughout discovery, Latino Donor had
10   already retained a survey expert and commissioned a secondary meaning survey to
11   rebut any expert survey evidence presented by CP, at significant cost and effort. The
12   Scheduling Order sets August 15, 2025 as the deadline for expert disclosures and
13   September 11, 2025 as the deadline for rebuttal disclosures, but does not define what
14   qualifies as "rebuttal" disclosures. Under the Federal Rules and other relevant
15   authorities, rebuttal testimony is appropriate where it addresses the same subject
16   matter identified by the opposing party, even if the party with the evidentiary burden
17   fails to produce an expert report. Accordingly, leave to submit the rebuttal report may
18   not be required. Latino Donor brings the present Motion in the abundance of caution
19   upon learning that CP refused to serve an expert report. To avoid prejudicing CP,
20   Latino Donor served its report on September 11, in accordance with the Scheduling
21   Order.

22       To the extent that Latino Donor's report does not qualify as "expert rebuttal,"
23   the Court should grant Latino Donor leave to serve its expert report, or alternatively
24   modify the Scheduling Order to clearly define expert rebuttal. The report may aid the
25   Court in resolving the issue of secondary meaning (though it is hardly necessary,
26   given the dearth of evidence presented by CP on this issue). Latino Donor has acted
27   diligently in preparing and seeking leave to serve it, and CP will suffer no prejudice
28   where the evidence relates to an element on which CP alone bears the burden of proof.

ERVIN COHEN & JESSUP LLP

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY
SCHEDULING ORDER

ERVIN COHEN & JESSUP LLP

## II.    STATEMENT OF FACTS

### A.    CP Initiates Lawsuit Despite USPTO Rejecting Trademark Protection of "Latino GDP" Wordmark

This lawsuit is about a series of annual reports, developed and produced by Latino Donor: *the LDC U.S. Latino GDP Report*. The reports were originally conceived and commissioned by Latino Donor in 2015, and published in 2017. CP only entered the picture in 2022. Once it did, CP immediately began a series of sharp and coercive business practices in an attempt to wrest the intellectual property rights for Latino Donor's report away from Latino Donor. But Latino Donor quickly rejected CP's attempts and broke off the relationship after the 2022 Report had been completed and presented to the public.

In September 2023, just prior to the release of the 2023 Official LDC U.S. Latino GDP Report, CP sent a cease-and-desist letter to Latino Donor regarding the 2023 Report. (Dkt. 53, ¶48). In that letter, CP informed Latino Donor that CP had an application pending with the USPTO for registration of the "Latino GDP" wordmark. This came as a complete shock to Latino Donor, since Latino Donor sponsored and published all prior versions of the Latino GDP reports, branded them with Latino Donor's LDC logo and brand, paid for marketing in connection with the reports, and exercised quality control over the reports ultimately released as the LDC U.S. LATINO GDP REPORT. (Dkt. 56, ¶¶26-28). To this day, no one had released a report with the name LATINO GDP standing alone. (*See* Dkt. 53, ¶46).

Unsurprisingly, the USPTO rejected CP's attempts to monopolize the term "LATINO GDP." On June 22, 2023 and again on May 27, 2024, the USPTO issued non-final office actions, rejecting CP's applications for the mark LATINO GDP on the grounds that the applied-for mark was generic, if not merely descriptive, and that the mark shown on the specimen did not match the applied-for mark. (Cunningham

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

Decl., ¶2, Ex. 1 at 2-5; Ex. 2 at 2-5).[1]

Undeterred, Community Partners filed this lawsuit anyway asserting, *inter alia*, that the term, "LATINO GDP" is its exclusive trademark for economic reports directed to calculating the GDP of US Latinos, i.e., the "Latino GDP."

## B.    CP Provides No Evidence of Secondary Meaning Of "Latino GDP", Indicates It Will Do So Through an Expert Report

In September 2024, Latino Donor served Interrogatory No. 14 asking CP to "identify and describe all facts, witnesses, and documents" supporting its contention that the "Latino GDP" mark has acquired secondary meaning, referring to proof that a descriptive designation has come to identify a single source in the minds of the relevant public, rather than merely describe a product. (Cunningham Decl., ¶4).

On October 14, 2024, CP served its responses to Latino Donor's Interrogatories. In its response to Interrogatory No. 14, it stated solely that "the term 'secondary meaning' is a legal concept that may require expert analysis to establish," including "market surveys, consumer perception studies, and other forms of expert analysis." (*Id.*, ¶5, Ex. 4). CP did not identify any other facts, witnesses, or documents at that time.

On January 13, 2025, Latino Donor sent CP a meet and confer letter regarding deficiencies in discovery. (*Id.*, Ex. 5). With respect to Interrogatory No. 14, Latino Donor emphasized that secondary meaning is a key issue in the case because the asserted "Latino GDP" designation is, at minimum, highly descriptive. Latino Donor explained that whether such a designation has acquired secondary meaning requires analysis of several recognized factors, including consumer perception, advertising, demonstrated utility, the extent and duration of use, exclusivity of use, evidence of

---

[1] As a defensive matter, in November 2023, Latino Donor applied for trademark protection for LATINO GDP (App. No. 98-271,304), which the USPTO correctly rejected on the grounds that it was merely descriptive, if not generic. (Cunningham Decl., ¶3, Ex. 3). Latino Donor agrees with the USPTO, and abandoned this application.

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

ERVIN COHEN & JESSUP LLP

copying, and actual consumer confusion. The letter noted that CP was required to identify the underlying facts, witnesses, and documents it intends to rely upon, and that CP had failed to provide any such facts, witnesses, or documents. Latino Donor therefore stated its understanding that CP does not contend that its use of the "Latino GDP" designation has acquired secondary meaning, or at least that CP only intends to present expert testimony regarding survey evidence in support of this assertion.

On March 7, 2025, CP responded to Latino Donor's January 13, 2025 letter. (*Id.*, ¶7, Ex. 6). In that letter, CP again underscored its intent to establish secondary meaning through expert testimony, stating that "establishing secondary meaning involves multiple factors, including surveys and industry perception, which are typically addressed through expert testimony." (Ex. 6 at 5). However, CP agreed to identify its factual evidence of secondary meaning. (*Id.* at 8).

On August 15, 2025, the close of fact discovery and the deadline to submit opening expert disclosures, CP served an amended response to Interrogatory No. 14. (*Id.*, Ex. 7 at 20-21). That amended response stated:

> "Amended Response: In addition to the above, Plaintiff states that the declarations of Jorge Mettey (CP004230–4233) [and Elizabeth Parrot] (CP004204–08) provide information that Plaintiff may rely upon for evidence of secondary meaning. In addition to the above, Plaintiff directs Defendants to Bates Nos. CP004360–004367. CP further states that the Interrogatory seeks information that is directed to expert discovery and CP reserves all rights to amend its responses to reflect information obtained during expert discovery as well as information the relevance of which becomes apparent during expert discovery."

The two declarations cited by CP in its amended response do not provide any information relevant to secondary meaning.

The declaration of Jorge Mettey (April 30, 2025, CP004230–4233), a media consultant who was retained by CP (Ex. 8 [CP004115]), describes his media background, his time on Latino Donor's Advisory Board, and his understanding that the Latino GDP Report "belong[ed] to Dr. David Hayes-Bautista" and was produced by Dr. Hayes-Bautista and his team. (*Id.*). He also notes leaving the board over a compensation dispute. The declaration does not provide any facts relevant to

ERVIN COHEN & JESSUP LLP

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

1  secondary meaning, such as consumer perception, advertising, extent of use,
2  exclusivity, copying, or actual confusion.

3      The declaration of Elizabeth Parrott (May 9, 2025, CP004204–4208) describes
4  organizing a 2019–2020 Hispanic Heritage Month event, initially contacting Latino
5  Donor because the LDC U.S. Latino GDP Report "bore LDC's name," and later
6  learning it was purportedly produced by Community Partners. (*Id.*, Ex. 9). She notes
7  inviting Sol Trujillo to speak once at an event but later turned to Dr. Matthew Fienup
8  for his grasp of the report's data and analysis. The declaration does not address Ms.
9  Parrot's perception of the asserted "LATINO GDP" mark standing alone.

10     CP's amended response to Interrogatory No. 14 alludes to Bates Nos.
11  CP004360–004367, which consist of invoices dating back to 2019 totaling $4,887.95
12  for creating booklets of the Latino GDP reports. (*Id.*, Ex. 10). Even if one were to
13  generously characterize these expenses as "advertising," they amount to a minuscule
14  sum spread over several years, ending in April 2023. Such a limited expenditure
15  cannot reasonably be viewed as a meaningful advertising campaign, much less one
16  capable of creating an association in the minds of consumers between the term "Latino
17  GDP" and CP as a source. Importantly, CP has not disclosed any other supposed
18  "advertising" costs. (Ex. 7 at 11).

19     CP's other responses to Latino Donor's Interrogatories only confirmed that it
20  lacks any evidence to support the factors for secondary meaning. For example, CP
21  claims to market its reports to "the entire consuming public" (Ex. 7 at 18), yet, on
22  average, its websites received less than 20 visitors per day. (*Id.* at 14; Ex. 12).

23     In sum, CP repeatedly represented that it would present expert testimony on the
24  issue of secondary meaning, and indeed, given the lack of other evidence addressed
25  to the secondary meaning factors, placed all of its eggs in the expert survey basket.

26     Latino Donor relied on CP's representations in hiring its own rebuttal survey
27  expert, Dr. Justin Anderson. (Cunningham Decl., ¶11). Given the limited time period
28  for rebuttal, this required Dr. Anderson to conduct his rebuttal survey to evaluate

ERVIN COHEN & JESSUP LLP

1 | secondary meaning under proper methodology prior to receiving CP's promised
2 | expert report. (Cunningham Decl., ¶12). Dr. Anderson has completed his survey, and
3 | Latino Donor served Dr. Anderson's report on September 11, 2025, the expert rebuttal
4 | deadline. (Cunningham Decl., ¶15, Ex. 11).

5 | Dr. Anderson's report further confirms what was apparent from CP's meager
6 | evidentiary showing: LATINO GDP has no secondary meaning. (*Id.*). Courts
7 | routinely require 30% net recognition relative to the control to establish secondary
8 | meaning. *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1179
9 | (N.D. Cal. 2007) (holding survey showing 25% recognition among interior designers
10 | "undercuts [plaintiff's] argument for secondary meaning"); *Brooks Shoe Mfg. Co. v.*
11 | *Suave Shoe Corp.*, 533 F. Supp. 75, 81 (S.D. Fla. 1981), aff'd, 716 F.2d 854 (11th Cir.
12 | 1983) ("The fact that only 2.7% of those people interviewed in Defendant's survey
13 | recognized the source of the 'V' to be Brooks, indicates to this Court that the public's
14 | association between the 'V' and Brooks Shoe Manufacturing Company is de
15 | minimus"); *see also Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 394 (7th
16 | Cir. 1992) (holding that while a 50% figure would be sufficient, a 38% recognition
17 | figure is "marginal to prove secondary meaning even in a properly designed survey");
18 | *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 815 (S.D.
19 | Tex. 2017) ("A net (after subtracting the control results) minimum of 50 percent or
20 | higher is generally accepted in Dr. Ford's field as the threshold for showing secondary
21 | meaning").

22 | But, as Dr. Anderson's report shows, compared to the control, 1.4% of
23 | consumers associate LATINO GDP with a single source, and even without a control,
24 | recognition is less than 9%. Dr. Anderson's report also responded to the limited
25 | evidence of secondary meaning that CP provided, which CP identified for the first
26 | time on August 15, 2025.
27 | / / /
28 | / / /

### C. The Court's Scheduling Order Does Not Define Rebuttal Expert Reports

Under the Court's April 23, 2025 Order Re: Joint Stipulation to Amend Case Schedule, the "expert disclosure cut-off" was August 15, 2025, with the "expert rebuttal cut-off" on September 11, 2025. (Dkt. 66). The order does not define what qualifies as "expert rebuttal."

Despite repeatedly stating its intent to rely on expert testimony to establish secondary meaning, CP did not serve any expert report by the August 15 disclosure deadline. (Cunningham Decl., ¶13). CP's failure to submit expert testimony left it with no viable evidence to support its contention that the "Latino GDP" designation has acquired secondary meaning.[2] By that point, Latino Donor had already prepared its rebuttal report at great time and expense, specifically to address the secondary meaning evidence CP had long suggested it would offer.  (Cunningham Decl., ¶13). Despite CP's failure to submit an opening report (or other viable evidence of secondary meaning), Latino Donor's rebuttal report may nonetheless be helpful to the Court and/or the jury.

Latino Donor believes that its report is properly classified as "expert rebuttal," because it is addressed to an issue on which CP bears the burden of proof. But, in the abundance of caution, Latino Donor brings the present motion to confirm its view of the Scheduling Order, and if Latino Donor's view of the Scheduling Order is incorrect, to seek leave to file the rebuttal report and/or modify the scheduling order to conform to Latino Donor's interpretation.

### III. ARGUMENT

### A. Latino Donor's Report Qualifies As "Expert Rebuttal" Under The Scheduling Order

The Scheduling Order and Federal Rule of Civil Procedure 26 indicate that

---

[2] To Latino Donor's surprise, CP rejected Latino Donor's offer to accept an opening expert report by August 22, 2025, stating that it was only prepared to rebut expert testimony offered by Latino Donor. (Chen Decl., ¶¶2-3, Ex. 13).

ERVIN COHEN & JESSUP LLP

1   Latino Donor may properly serve the rebuttal expert report of Dr. Justin Anderson,

2   even in the absence of an initial report from CP. Because CP bears the burden of

3   proving secondary meaning, Latino Donor's report is properly classified as a "expert

4   rebuttal" directed at the minimal evidence CP has offered.

### 1.   The Scheduling Order Indicates That Latino Donor Can Properly Serve the Rebuttal Report

7   The Federal Rules of Civil Procedure permit experts to submit a rebuttal report

8   intended to contradict or rebut evidence on "the same subject matter identified by

9   another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). As the Advisory Committee Notes

10  explaining this language clarify, "in most cases the party with the burden of proof on

11  an issue should disclose its expert testimony on that issue before other parties are

12  required to make their disclosures with respect to that issue." Notes of Advisory

13  Committee on Rules—1993 Amendment, Paragraph (2). Thus, a rebuttal expert report

14  "is properly admissible when it will explain, repel, counteract or disprove the

15  evidence of the adverse party." *Presidio Components, Inc. v. Am. Tech. Ceramics

16  Corp.*, 2013 WL 4068833, at *17 (S.D. Cal. Aug. 12, 2013); *see also Donell v. Fid.

17  Nat. Title Agency of Nevada*, 2012 WL 170990, at *3 (D. Nev. Jan. 20, 2012) ("The

18  fact that Plaintiff has only designated a rebuttal expert, and not an initial expert, is not

19  grounds to strike his report or exclude his testimony.").

20  Courts allow the presentation of a rebuttal expert report absent the existence of

21  the adverse party's initial expert report. *See Hynix Semiconductor Inc. v. Rambus Inc.*,

22  2008 WL 350647, at *4 (N.D. Cal. Feb. 3, 2008) (allowing rebuttal expert report

23  despite lack of initial report). In *FLOE Int'l Inc. v. Newmans' Mfg. Inc.*, the court

24  rejected an attempt to exclude a rebuttal expert where the defendant had declined to

25  serve an initial expert report. 2006 WL 5159513 (D. Minn. Feb. 23, 2006). The court

26  explained that a party without the burden of proof may still serve a rebuttal report,

27  even in the absence of an initial expert report, so long as it is within the Scheduling

28  Order, because otherwise a party would be unfairly barred from responding to

ERVIN COHEN & JESSUP LLP

18525.2:11636412.8                                    13

arguments that "the party that bears the burden of proof should make." *Id.* at *7. The Court reasoned that "[w]hile the party carrying the burden on an issue may not want to present expert opinion evidence on that issue, the opposing party should not be denied the opportunity to present expert opinion evidence on the same issue, simply because the party carrying the burden chose not to." *Id.*

Here, the Court's April 23, 2025 Scheduling Order did not define what qualifies as "expert rebuttal." In Latino Donor's view, its proposed expert report qualifies as "expert rebuttal," given that it is addressed to an issue on which CP bears the burden of proof. To hold otherwise would insulate CP's essentially unsupported claim of secondary meaning from expert scrutiny and reward CP's decision to withhold an expert report despite repeatedly representing that it intended to rely on one.

### 2. The Report Is Properly Classified as a Rebuttal Expert Report Because It Is Plaintiff's Burden to Show Secondary Meaning

When a party asserts rights in an unregistered mark, it bears the burden of proving that the mark is valid and protectable. *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927-28 (9th Cir. 2005) ("However, when a mark is not registered, the presumption of validity does not apply; therefore, the plaintiff is left with the task of satisfying its burden of proof of establishing a valid mark"). As the USPTO correctly found, CP's asserted LATINO GDP "mark" is highly descriptive, if not outright generic. (Cunningham Decl., Ex. 1 at 2; Ex. 2 at 2-4; Ex. 3 at 2-4). Descriptive marks may be protected only if the plaintiff has met its burden to show that it has acquired secondary meaning, that is, "a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980). Because the mark is highly descriptive, CP's burden is significantly higher. *Snap Inc. v. Vidal*, 750 F. Supp. 3d 1120, 1156 (C.D. Cal. 2024); *Royal Crown Co., Inc. v. The Coca-Cola Co.*, 892 F.3d 1358, 1365 (Fed. Cir. 2018)

ERVIN COHEN & JESSUP LLP

1  ("a more descriptive term requires more evidence of secondary meaning").

2  CP indisputably has the burden to prove secondary meaning of its unregistered

3  mark. *Yellow Cab Co.*, 419 F.3d at 928; *Snap*, 750 F. Supp. 3d at 1156. Latino Donor's

4  rebuttal expert report is not in support of Latino Donor's own case in chief, but rather

5  rebuts the minimal evidence CP has chosen to put forward regarding the purported

6  secondary meaning of the "Latino GDP" mark. Thus, Latino Donor's expert report,

7  which Latino Donor served on September 11, 2025, is timely under the Scheduling

8  Order. (Dkt. 66). What little CP has presented to carry its burden may be rebutted,

9  and Latino Donor's expert report properly does so.

10  **B.    In The Event That Latino Donor's Interpretation Of The**

11  **Scheduling Order Is Incorrect, The Court Should Grant**

12  **Latino Donor Leave Serve The Report Or Amend The**

13  **Scheduling Order To Permit Service**

14  Frankly, Latino Donor is shocked that CP did not produce an expert report on

15  secondary meaning. Given CP's lack of any other evidence of secondary meaning, a

16  survey was essentially mandatory. In the event that Latino Donor's interpretation of

17  the Scheduling Order is incorrect, Latino Donor should be granted leave to serve its

18  expert report, both because the report could materially assist the Court in resolving

19  this issue and because Latino Donor has undertaken the effort to produce it at

20  significant time and expense based on CP's repeated representations during

21  discovery. In the alternative, there is good cause to amend the Scheduling Order to

22  permit the rebuttal report to be served.

23  *1.    The Court should permit Latino Donor's expert report if*

24  *it is untimely*

25  This Court has the discretion to grant leave for Latino Donor to file its expert

26  report on or before the rebuttal report deadline. *Milne Fruit Prods., Inc. v. Indian*

27  *Summer Coop., Inc.*, 2023 WL 6617318, *2 (E.D. Wash. Mar. 1, 2023) (granting

28  motion for leave to file late expert report); *Gene Pool Techs., Inc. v. Coastal Harvest,*

ERVIN COHEN & JESSUP LLP

*LLC*, 2023 WL 5941757, *5, *7 (C.D. Cal. July 26, 2023) (denying motion to exclude untimely expert reports due to lack of prejudice).

In determining whether to permit untimely evidence, courts consider "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence" to determine whether the disclosure is harmless or justified. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (finding no abuse of discretion in permitting expert testimony where party served initial expert report more than one month after disclosure deadline, but three weeks before the expert discovery cut-off and seven months before trial); *see Milne Fruit Prods., Inc.*, 2023 WL 6617318, *2 (evaluating *Lanard* factors in assessing motion for leave and concluding that late-filed expert report was harmless because opposing party was not prejudiced or surprised and any prejudice could be cured by permitting non-disclosing party to depose expert); *Gene Pool Techs*, 2023 WL 5941757, *5 (also considering importance of the evidence and explanation for late disclosure). Leave to amend will not prejudice CP in any way. Had CP elected to serve its opening report on secondary meaning, as it repeatedly represented that it would do, there is no question that Latino Donor would have been permitted to present its rebuttal report on or before September 11, 2025 (as it did). Permitting Latino Donor to serve its report on this date is consistent with the intent of the Federal Rules and does not meaningfully change the scheduling order. Fed. R. Civ. P. 26(a)(2) Advisory Committee's Notes to 1993 Amendment (noting that "in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue").

As such, there is ample time remaining in the fact discovery period and before trial for CP to depose Latino Donor's expert. *Lanard Toys Ltd.*, 375 F. App'x at 713. Permitting Latino Donor's report will not risk delaying trial, as the Scheduling Order

ERVIN COHEN & JESSUP LLP

16

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

already contemplates the September 11 exchange. Courts routinely permit late-disclosed expert testimony under these circumstances. *See, e.g.*, *Id.*; *Gene Pool Techs.*, 2023 WL 5941757, *7; *Milne Fruit Prods., Inc.*, 2023 WL 6617318, *2; *Andrews v. Plains all Am. Pipeline, L.P.*, 2019 WL 6647928, *5 (C.D. Cal. Nov. 22, 2019); *Jarrow Formulas, Inc. v. Now Health Grp., Inc.*, 2012 WL 3186576, *15 (C.D. Cal. Aug. 2, 2012). Indeed, Courts have granted leave for late disclosure in far less compelling circumstances. *See, e.g.*, *Milne Fruit Prods., Inc.*, 2023 WL 6617318, *2 (retroactive motion for leave to disclose expert witness disclosed six months after disclosure deadline).

Nor is there any evidence of bad faith or willfulness on the part of Latino Donor. As an initial matter, Latino Donor is proactively filing the present Motion, in case its view of the Scheduling Order is incorrect. As explained in detail above (*see Supra*, § II.B), based on CP's repeated statements that it would be presenting expert testimony, Latino Donor sincerely believed that CP would be presenting "market surveys, consumer perception studies, and other forms of expert analysis." (Cunningham Decl., ¶11; Ex. 4 at 17; Ex. 6 at 2). This is particularly true given the absence of evidence on the other secondary meaning factors. *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (in the Ninth Circuit, secondary meaning is established by considering a number of factors – namely, "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.").

In Latino Donor's view, survey evidence was the only possible way that CP could meet its heightened burden of establishing secondary meaning in such a highly descriptive term. *See, e.g.*, *In Re Certain Vacuum Bottles & Components Thereof*, 4 ITRD 1937, *8 (USITC Oct. 29, 1982) ("Under the specific facts of this case, a consumer survey is necessary to prove that the overall appearance of Union's naked

ERVIN COHEN & JESSUP LLP

1  vacuum bottle has achieved secondary meaning"); *Brown v. Quiniou*, 744 F. Supp.

2  463, 470 (S.D.N.Y. 1990) ("although failure to undertake a consumer survey

3  concerning recognition of the AGATHA mark is not by itself fatal to plaintiffs'

4  assertion of secondary meaning, … where the other evidence of consumer recognition

5  is hardly overwhelming, the absence of survey evidence weighs heavily against

6  plaintiffs' position."); *see also Monster, Inc. v. Dolby Lab'ys Licensing Corp.*, 920 F.

7  Supp. 2d 1066, 1072 (N.D. Cal. 2013) ("a trier of fact may be entitled to presume that

8  one party's failure to conduct a survey concedes that the survey evidence would be

9  unfavorable to it").

10    Accordingly, Latino Donor commissioned its own secondary meaning survey

11  to rebut CP's anticipated survey evidence. These kinds of surveys require months of

12  preparation, planning, and execution, making it impossible to produce them on short

13  notice, such as in the three-week rebuttal window. By the time that CP confirmed that

14  it would not be submitting an expert report, Latino Donor had already commissioned

15  its rebuttal survey at great time and expense, specifically to rebut the expert evidence

16  CP had long stated it would offer.

17    Moreover, Dr. Anderson's report will respond to the factual "evidence" of

18  secondary meaning, which CP identified for the first time on August 15, 2025—the

19  same date that opening reports would have been due.

20    CP may argue that permitting Latino Donor's report to be filed on the expert

21  rebuttal deadline deprives CP of the chance to rebut Latino Donor's report. This is

22  incorrect. Even if Latino Donor had presented its report on August 15, 2025, because

23  CP bears the affirmative burden of proof on the issue of secondary meaning, CP would

24  not permitted to rebut Latino Donor's survey evidence with survey evidence of its

25  own. *See, e.g.*, *FLOE Int'l Inc.*, 2006 WL 5159513, at *3 (excluding response to

26  rebuttal report as untimely); *Oracle America, Inc. v. Google Inc.*, 2011 WL 5572835,

27  at *3 (N.D. Cal. Nov. 15, 2015) ("A party with the burden of proof on an issue should

28  not be allowed to secretly prepare and army of 'rebuttal' experts to attack the

Ervin Cohen & Jessup LLP

18525.2:11636412.8
18
MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

1  opposition reports like Odysseus and the Greeks springing forth from their wooden

2  hideout in Troy."). Or, the Court could extend the expert discovery period to permit

3  CP to provide a rebuttal report.

4         If Latino Donor's expert report is late, such late disclosure is harmless and

5  justified. Latino Donor's expert survey is addressed to the central issue in this case,

6  and the results are striking: even without a control, consumers simply do not associate

7  "LATINO GDP" with a single source. Accordingly, Latino Donor maintains that the

8  Court should grant leave to serve its expert report so that it may provide confirmation

9  of what both parties already know – that CP is unable to present legitimate evidence

10 of secondary meaning.

11              **2.    Good cause exists to modify the Scheduling Order**

12        Alternatively, good cause exists to modify the Scheduling Order to permit the

13 rebuttal report to be served. *See* Fed. R. Civ. P. 16(b)(4) (stating that schedule may be

14 modified for "for good cause and with the judge's consent"). The good cause inquiry

15 "focuses on the reasonable diligence of the moving party." *Noyes v. Kelly Servs.*, 488

16 F.3d 1163, 1174 n.6 (9th Cir. 2007); *see also Poore-Rando v. United States*, 2017 WL

17 5549580, at *2 (W.D. Wash. Nov. 17, 2017) (holding "good cause exists to modify

18 the scheduling order as necessary to receive and consider . . . expert report" where

19 moving party was diligent and no prejudice to other party); *Walker & Zanger, Inc. v.*

20 *Paragon Indus.*, 2006 WL 1581969, at *2 (N.D. Cal. June 6, 2006) (same, sua sponte,

21 in response to non-disclosing party's motion to strike).

22        Latino Donor diligently prepared its rebuttal report in reliance on CP's repeated

23 assertions that it would be providing expert testimony. Given that CP bears the

24 affirmative burden of proof to demonstrate secondary meaning, Latino Donor should

25 not reasonably have been expected to present its expert report before CP's disclosures.

26 Fed. R. Civ. P. 26(a)(2) Advisory Committee's Notes to 1993 Amendment; *see also*

27 *Oracle America, Inc.*, 2011 WL 5572835, at *3.

28        When CP failed to do submit an expert report by the August 15 deadline, Latino

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

ERVIN COHEN & JESSUP LLP

Donor promptly acted to confirm that its use of its report is permissible, or to secure leave from the Court if it was not. The timing underscores Latino Donor's diligence, as it had already invested significant resources in preparing a survey-based rebuttal report. Accordingly, good cause exists to modify the Scheduling Order as follows:

| Former Date / New Date | Event |
|---|---|
| August 15, 2025 | Expert Disclosure Cut-Off **with respect to each issue as to which such party bears the burden of proof** |
| September 11, 2025 | Expert Rebuttal Cut-Off |
| October 8, 2025 | Expert Discovery Cut-Off |

Notably, the dates are unchanged. The only amendment required would be to clarify the ambiguity in the Scheduling Order, to clearly comport with the Advisory Comment to the Federal Rules.

## IV.  CONCLUSION

For the foregoing reasons, to the extent required, Latino Donor respectfully requests leave to use its expert survey report on secondary meaning, or in the alternative, that the Court modify the Scheduling Order to clearly permit the report as an rebuttal disclosure.

DATED:  September 17, 2025          ERVIN COHEN & JESSUP LLP

Kelly Cunningham
Elliot Z. Chen
Zoe Vallier


By: _____

Elliot Z. Chen
Attorneys for Defendant LATINO
DONOR COLLABORATIVE

20
MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Latino Donor Collaborative certifies that this brief contains 5,309 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: September 17, 2025

_Elliot Chen_
_____
Elliot Z. Chen

MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER

# CERTIFICATE OF SERVICE

## CENTRAL DISTRICT OF CALIFORNIA

The undersigned certifies that on September 17, 2025, the following documents and all related attachments ("Documents") were filed with the Court using the CM/ECF system.

**DEFENDANT LATINO DONOR COLLABORATIVE'S NOTICE OF MOTION AND MOTION FOR LEAVE TO USE REBUTTAL EXPERT REPORT, OR IN THE ALTERNATIVE MODIFY SCHEDULING ORDER**

Pursuant to L.R. 5-3.2, all parties to the above case and/or each attorneys of record herein who are registered users are being served with a copy of these Documents via the Court's CM/ECF system. Any other parties and/or attorneys of record who are not registered users from the following list are being served by first class mail.

By: _____
Elliot Z. Chen